**NATIONAL CEMENT COMPANY, Petitioner,**

v.

**FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION, Respondent.**

**Ronny Boswell, Intervenor.**

No. 93–6557.

United States Court of Appeals, Eleventh Circuit.

Aug. 3, 1994.

Thomas F. Campbell, Harry L. Hopkins, Lange, Simpson, Robinson & Somerville, Birmingham, AL, for appellant.

L. Joseph Ferrara, Federal Mine Safety & Health Review Com'n, Washington, DC, Patrick K. Nakamura, Longshore, Nakamura & Quinn, Birmingham, AL, for Ronny Boswell, intervener.

Before DUBINA, Circuit Judge, CLARK and ESCHBACH *, Senior Circuit Judges.

DUBINA, Circuit Judge:

This case involves a petition for review of a decision of the Federal Mine Safety and Health Review Commission ("FMSHRC" or "Commission"). The petitioner, National Cement Company ("National Cement"), appeals from an adverse decision by the Commission finding that National Cement unlawfully disqualified employee Ronny Boswell ("Boswell") in violation of section 105(c) of the Mine Act, 30 U.S.C. § 815(c). The Commission found that Boswell engaged in protected activity when he refused to perform work he reasonably and in good faith believed to be hazardous. For the reasons that follow, we reverse the Commission's finding that Boswell was engaged in protected activity when he refused to perform work he believed to be unsafe, and remand the case to the Commission for further proceedings.

## I. BACKGROUND

At the time of the alleged discrimination, Boswell had been employed with National Cement at its plant in Ragland, Alabama, for about 14 years, including ten years in the position of utility laborer. Boswell's supervisor was James Allen ("Allen"). National Cement disqualified Boswell from his position as a utility laborer pursuant to a "Disciplinary Action Report" ("Report") dated January 11, 1990. National Cement enumerated five grounds for Boswell's disqualification: (1) a kiln incident on August 8, 1989; (2) a clay shredder incident on October 1 and 2, 1989; (3) a radio incident on October 22, 1989; (4) a kiln incident on December 22, 1989; and (5) a bobcat and wheelbarrow incident on January 1, 1990.[1]

On January 1, 1990, Allen directed Boswell to use a bobcat to remove steel mill grinding balls from the mill basement.[2] The task involved traveling on a 20 to 30 degree in-

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. The only incident raised on appeal by National Cement concerns the bobcat and wheelbarrow incident. The Commission based its decision that Boswell was illegally disqualified from his job as a utility laborer upon this incident and a kiln incident in August 1989. Since National Cement only appeals the Commission's finding that Boswell engaged in protected activity when he refused to use the bobcat and wheelbarrow, this is the only incident we will address.

2. The bobcat is a four-wheeled vehicle with a bucket in front that is used to pick up, transport, and dump loose material. The vehicle does not have a steering wheel and is operated with hand and foot controls. R2–34.

clined concrete ramp that was strewn with loose clinkers (small rocks). The ramp was 12 feet wide and 30 to 40 feet long. There were six to eight inches of water at the bottom of the ramp in a ditch with a metal-eared safety barrier. Boswell responded that he believed it was unsafe for him to operate the bobcat because he had no training on the machine. Allen then told Boswell to use a wheelbarrow to perform the task and Boswell refused on the grounds that he believed it was unsafe to push the wheelbarrow. Allen testified that he then explained to Boswell various ways of performing the task safely. Allen informed Boswell that he could get a broom and sweep the clinkers off the ramp before using the wheelbarrow. Allen offered to provide Boswell with help in sweeping the clinkers. Allen told Boswell he could carry loads in the wheelbarrow as small as ten pounds per trip. Boswell still refused to perform the task and called for a safety review. Allen dropped his request and sent Boswell to perform another task for the remainder of his shift. A safety review was not conducted.

On January 11, 1990, management and union officials met to discuss Boswell's job performance. Boswell was advised that based on the five incidents referenced in the Report, he was disqualified as a utility laborer due to his unsatisfactory performance. National Cement presented Boswell with the option of exercising his seniority to "bump" or "roll" to another job. At the request of his union, Boswell elected to roll to a pay-loader operator's job, pay grade 15, base rate of $12.50 per hour. Although this job was a lower pay grade, it resulted in a net increase in pay to Boswell due to overtime pay.

On February 26, 1990, Boswell's attorney filed a discrimination complaint with the Mine Safety and Health Administration ("MSHA") based on the disqualification. MSHA notified Boswell by letter dated May 4, 1990, that it had determined that he had not been discriminated against in violation of section 105(c) of the Mine Act, 30 U.S.C.

§ 815(c). More than 30 days after the Secretary's determination, on June 18, 1990, Boswell filed a complaint with the Commission pursuant to section 105(c)(3) of the Mine Act.[3] An administrative law judge ("ALJ") conducted a hearing and found that Boswell did not need to produce evidence to explain the untimeliness of his complaint and further found that he was unlawfully "disqualified" from his job because he engaged in a protected work refusal when he refused his foreman's order to push a wheelbarrow up a 20 to 30 degree ramp.

National Cement filed a petition for review pursuant to 30 U.S.C. § 823(d)(2)(B). The Commission granted discretionary review and entered an order affirming in part, vacating in part, and remanding in part the decision of the ALJ. The Commission held that the complaint was timely filed but remanded the case for further factual findings regarding certain evidence and defenses presented by National Cement. The Commission specifically asked the ALJ to determine whether telling Boswell that he could do his assigned task by use of a wheelbarrow instead of a bobcat should have reasonably quelled his fears about moving steel balls from one location to another. If the wheelbarrow alternative to use of the bobcat should have reasonably quelled Boswell's fears, the Commission stated that Boswell's work refusal lost its protected status and could provide a legitimate justification for Boswell's disqualification and transfer as well as the basis for an affirmative defense.

On April 3, 1992, the ALJ issued a decision which stated that the wheelbarrow alternative was not unsafe as an objective matter but that the work refusal was, nonetheless, protected because Boswell believed in good faith that it would be unsafe. The ALJ also amended his prior order disallowing an award of back-pay and scheduled a supplemental hearing. Following the supplemental hearing, the ALJ awarded back-pay to Boswell.

---

**3.** In relevant part, section 105(c)(3) of the Mine Act provides that "[i]f the Secretary, upon investigation, determines that the provisions of [section 105(c)] have not been violated, the complainant shall have the right, within 30 days of notice of the Secretary's determination, to file an action in his own behalf before the Commission, charging discrimination or interference...." 30 U.S.C. § 815(c)(3).

National Cement again petitioned the Commission for discretionary review of the ALJ's decisions. The Commission agreed only to review the ALJ's decision regarding the award of back-pay. The Commission vacated the ALJ's award of back-pay as being beyond the scope of its remand order. National Cement then filed a timely petition for review of the Commission's orders in this court pursuant to 30 U.S.C. § 816(a).

## II.  DISCUSSION

■ In reviewing the Commission's decisions, we are bound by the same standard that governs the Commission's review of the ALJ's findings.  Review is based on the following:

(1) A finding or conclusion of material fact is not supported by substantial evidence.

(2) A necessary legal conclusion is erroneous.

(3) The decision is contrary to law or to the duly promulgated rules or decisions of the Commission.

(4) A substantial question of law, policy or discretion is involved.

(5) A prejudicial error of procedure was committed.

30 U.S.C. § 823(d).  Findings of fact by the Commission should be upheld only "if supported by substantial evidence on the record considered as a whole...."  30 U.S.C. § 816(a)(1).  *See also Gilbert v. FMSHRC,* 866 F.2d 1433, 1439–40 (D.C.Cir.1989).  Substantial evidence is determined by evaluating "whether there is 'such relevant evidence as a reasonable mind might accept as adequate to support [the judge's] conclusion.'"  *Chaney Creek Coal Corp. v. FMSHRC,* 866 F.2d 1424, 1431 (D.C.Cir.1989) (citations omitted).

### A.  *Timeliness*

. ■ On August 28, 1990, National Cement filed a motion to dismiss the discrimination proceeding as being untimely filed under section 105(c)(3) of the Mine Act.  This subsection requires that a complainant file an action before the Commission within 30 days from the date of the Secretary's determination.  *See* 30 U.S.C. § 815(c)(3).  The Secretary's determination was made on May 4, 1990, and

Boswell filed his complaint before the Commission on June 18, 1990.  At the hearing, the ALJ denied the motion to dismiss stating that the filing requirements are not jurisdictional.

Section 105(c)(3) provides in pertinent part as follows:

Within 90 days of the receipt of a complaint filed under paragraph (2), the Secretary shall notify, in writing, the miner ... of his determination whether a violation has occurred.  If the Secretary, upon investigation, determines that the provisions of this subsection have not been violated, the complainant shall have the right, within 30 days of notice of the Secretary's determination, to file an action in his own behalf before the Commission charging discrimination....

30 U.S.C. § 815(c)(3).  Although the 30–day limitation is not jurisdictional, it nonetheless serves as a limitations period unless adequate findings of fact indicate that it should not be applied.  Many statutes contain similar provisions.  *See* 42 U.S.C. § 2000e, *et seq.* In *Zipes v. TransWorld Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), the Supreme Court held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."  The Supreme Court also recently recognized that it has allowed equitable tolling only in very narrow circumstances:

Federal courts have typically extended equitable relief only sparingly.  We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.  We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.  *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 1725, 80 L.Ed.2d 196 (1984) (footnotes omitted).

*Irwin v. Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990).

In this case, the record shows that on May 4, 1990, Boswell received notice that the Secretary of Labor found baseless his claim of discrimination. The letter also admonished him that his complaint must be filed "within thirty days after receipt of this letter with the Mine Safety and Health Review Commission...." Nonetheless, Boswell's request that the Commission pursue his complaint was not received at the Commission until June 18, 1990—45 days later.

In addressing National Cement's timeliness argument, the Commission found as follows:

> Here, the record does not indicate when Boswell actually received MSHA's May 4, 1990, letter notifying him of its determination, but, assuming three days for its receipt through the mail, Boswell's complaint, filed on June 18, 1990, was at most, 12 days late. The record also shows that on June 6, 1990, Boswell erroneously mailed his complaint to MSHA at its Arlington, Virginia, office, and that MSHA forwarded it to the Commission ... Under these circumstances, we conclude that the lateness of Boswell's filing was *de minimis* and appears to have resulted, at least in part, from mistake, inadvertence, or excusable neglect. Most significantly, National Cement has shown no prejudice in connection with this brief delay ..., nor has there been any showing that Boswell knowingly slumbered on his rights.

R1–382.

National Cement argues that the Commission's findings are due to be reversed for the following reasons: (1) the record is devoid of any evidence that Boswell's late filing was the result of "mistake, inadvertence, or excusable neglect;" (2) assuming that mailings are received three days after mailing, and therefore, that Boswell received the notice on May 7, and mailed an appeal on June 6, it would not have been deemed received until June 9 and thus, would still be untimely; (3) the record contains no evidence that Boswell mailed his complaint on June 6 and National Cement reviewed the record and was unable to find any evidence to support the Commission's claim that Boswell's complaint was mailed on June 6; and (4) the Commission erroneously concluded that National Cement "has shown no prejudice in connection with this brief delay...." National Cement does not have to demonstrate prejudice until Boswell presents evidence that equitable tolling principles should arguably be invoked. *See Baldwin County Welcome Center,* 466 U.S. at 151, 104 S.Ct. at 1725–26.

Boswell contends that the envelope in which he mailed his pro se complaint was in the record before the Commission. That envelope indicates a postmark of June 6 and an incorrect address. Boswell inadvertently mailed his complaint to MSHA at its Arlington, Virginia, office and MSHA then routed the complaint to the Commission on June 14. Boswell's complaint was then filed with the Commission on June 18. Copies of the envelope and routing slip were in the record before the Commission and have been submitted by Boswell in this appeal. It appears that Boswell's failure to mail his complaint to the proper address was a mistake. Additionally, there is no evidence that Boswell failed to exercise due diligence in preserving his legal rights. *See Baldwin County Welcome Center,* 466 U.S. at 151, 104 S.Ct. at 1725–26. We are therefore persuaded that the complaint was timely.

### B. *Protected Activity*

National Cement argues that the ALJ's conclusion that refusing to push a wheelbarrow up a twenty degree concrete ramp is "protected activity" under the Act, is unsupported by substantial evidence, contrary to precedent in the circuit courts, contrary to Supreme Court interpretation of similar provisions of other federal statutes, and contrary to the purpose of the Act itself. National Cement contends that the Commission correctly found that if the refusal to push the wheelbarrow, as an alternative to use of the Bobcat, was an alternative which should have reasonably quelled Boswell's fear that moving the balls was unsafe, "... his work refusal lost its protected status and could provide a legitimate justification for Boswell's disqualification and transfer as well as the basis

for an affirmative defense." R1–384. However, the Commission found that the ALJ failed to make adequate findings as to whether the wheelbarrow was a reasonably safe alternative and remanded for factual findings on this issue. *Id.* Thus, if the wheelbarrow incident was not "protected activity" under the Act, then Boswell's disqualification would be justified.

On remand, the ALJ determined that the refusal to work was protected activity and motivated the decision to disqualify Boswell. The ALJ concluded that:

> 1. The wheelbarrow incident did constitute a protected work refusal; and
>
> 2. National Cement Company failed to prove that it would have disqualified Boswell in any event for his unprotected activities alone, and this is so whether these activities are considered separately, in any combination thereof or in toto.

R1–394. The ALJ referred in his second numbered finding to the five instances stated in the Report. The last incident, the wheelbarrow incident, occurred ten days prior to the disqualification while the other four incidents on the Report occurred six weeks to six months earlier. In reference to the earlier instances, the ALJ found as follows:

> Assuming all these earlier incidents happened, and taking them at face value within the four corners of the documents presented, I conclude that National Cement has failed to prove that it would have disqualified Boswell over any of these incidents separately or together. The elapsed time alone between these incidents and the complained of adverse action casts substantial doubt on that claim.

R1–393.

■ Section 105(c)(1) provides in pertinent part:

> No person shall discharge or in any manner discriminate against or cause to be discharged or cause discrimination against or otherwise interfere with the exercise of the statutory rights of any miner ... subject to this Act because such miner ... has filed or made a complaint under or related to this Act....

30 U.S.C. § 815(c)(1). This statutory provision has been interpreted as protecting "a miner's right to refuse work under conditions that he reasonably and in good faith believes to be hazardous." *Gilbert v. Federal Mine Safety & Health Rev. Commission,* 866 F.2d 1433, 1439 (D.C.Cir.1989). In analyzing whether a miner's fear is reasonable, we must view the perception of a hazard from the miner's perspective at the time of the work refusal. *Secretary ex rel. Pratt v. River Hurricane Coal Co.,* 5 F.M.S.H.R.C. 1529, 1533 (1983). The Commission has explained that "[g]ood faith belief simply means honest belief that a hazard exists." *Secretary ex rel. Robinette v. United Castle Coal Co.,* 3 F.M.S.H.R.C. 803, 810 (1981).

■ In order to establish a *prima facie* case of discrimination under section 105(c) of the Mine Act, a complaining miner bears the burden of production and proof to establish (1) that he engaged in protected activity, and (2) that the adverse action complained of was motivated in any part by that activity. *Secretary on behalf of Pasula v. Consolidation Coal Company,* 2 F.M.S.H.R.C. 2786, 2799–2800 (1980), *rev'd on other grounds sub nom. Consolidation Coal Company v. Marshall,* 663 F.2d 1211 (3d Cir.1981). *See also Robinette,* 3 F.M.S.H.R.C. at 817–18. The operator may rebut the *prima facie* case by showing either that no protected activity occurred or that the adverse action was in no way motivated by protected activity. *Robinette,* 3 F.M.S.H.R.C. at 817–18 n. 20. If an operator cannot rebut the *prima facie* case in this manner, it may nevertheless affirmatively defend by proving that it was also motivated by the miner's unprotected activities alone. *Haro v. Magma Copper Company,* 4 F.M.S.H.R.C. 1935, 1937 (1982). The operator bears the burden of proof with regard to the affirmative defense. *Id.* The ultimate burden of persuasion does not shift from the complainant. *Robinette,* 3 F.M.S.H.R.C. at 818 n. 20.

■ "The Commission has employed two evidentiary guidelines to facilitate the assessment of a miner's 'good faith.'" *Gilbert,* 866 F.2d at 1440. First, when reasonably possible, a miner should communicate his safety concerns to some representative of the com-

pany. *Secretary ex rel. Dunmire & Estle v. Northern Coal Co.,* 4 F.M.S.H.R.C. 126, 133 (1982). Second, if a miner expresses a reasonable fear concerning safety, the operator has a duty to address the perceived danger. *Secretary ex rel. Bush v. Union Carbide Corp.,* 5 F.M.S.H.R.C. 993, 997–98 (1983). "In other words, if a miner refuses to work only after an operator has failed or refused to respond to a reasonable complaint regarding an unsafe work condition, it is not likely that the miner has acted in bad faith." *Gilbert,* 866 F.2d at 1440.

■ In this case, the principal question we must decide is whether Boswell reasonably and in good faith believed that he was going to be required to perform a job which was deleterious to his personal safety and when he expressed his concerns whether National Cement attempted to present an alternative which would quell Boswell's fears. In answering this question we must review the Commission's decision under the "substantial evidence" standard established by 30 U.S.C. § 823(d)(2)(A)(ii)(I). The substantial evidence standard has been explained as a review to determine "whether there is 'such relevant evidence as a reasonable mind might accept as adequate to support [the judge's] conclusion.'" *Chaney Creek Coal Corp. v. Federal Mine Safety & Health Rev. Commission,* 866 F.2d 1424, 1431 (D.C.Cir.1989).

The ALJ's first decision in this case stated that he found the bobcat and wheelbarrow incident to be protected activity. In finding the refusal to operate the bobcat protected activity, the ALJ found that Boswell "had very limited experience operating the Bobcat and none operating it on a twenty degree slope." R1–325–7. Although the record indicates that Boswell had adequate experience with the bobcat to safely perform the activity, the ALJ's opinion in this regard is of little significance since Allen's suggestion that Boswell use the wheelbarrow was a reasonably safe alternative. The ALJ failed to note that Boswell responded that his main concern was the danger associated with the clinkers on the ramp. R2–36, 37. The ALJ also ignored Allen's testimony that he addressed Boswell's fear in this regard by suggesting that the clinkers be swept away. R2–84, 85.

■ On remand, the ALJ addressed the overwhelming evidence that a miner could not reasonably believe pushing a wheelbarrow is unsafe. R1–390. The ALJ specifically found that "[a]s an objective matter ... I do not now find that the wheelbarrow alternative ... was unsafe." *Id.* However, the ALJ did find that Boswell held a "good faith" belief that it was not safe and then reached the erroneous conclusion that protected activity was established. This misstates the law. If the work refusal is not objectively reasonable, there is no protected activity. "[T]he [work] stoppage must be reasonable, as well as motivated by a genuine belief that it is necessary to protect safety or health." *Miller v. FMSHRC,* 687 F.2d 194, 195 (7th Cir.1982).

The following facts are supported by substantial evidence and were recognized by the ALJ and the Commission:

Boswell refused to move three buckets of steel balls from the bottom of the incline to the top using a Bobcat. When he was asked to do this, he told his supervisor that it was unsafe. The expressed reason for why it was unsafe was that he lacked sufficient training and experience on the Bobcat to drive it up and down a twenty degree incline. Faced with this objection, Allen instructed Boswell to use a wheelbarrow to move the balls. Wheelbarrows were the method for transporting these balls prior to obtaining Bobcats in 1971. Boswell refused, claiming that use of a wheelbarrow would be "unsafe" because of the presence of clinkers on the ramp. To overcome this complaint, Allen suggested Boswell simply sweep the ramp smooth before proceeding. Allen even offered to provide Boswell assistance. Boswell claimed that it would still be unsafe. In response, Allen told him to carry loads as little as ten pounds each in the wheelbarrow. Boswell still refused. Allen spent 15 to 20 minutes talking to Boswell about why it would be safe to use the wheelbarrow. After Allen had addressed every safety concern that Boswell could apparently imagine, and after Boswell still refused on

**534**

"safety" grounds, he was reassigned to another task.

The evidence indicates that Boswell's refusal to push the wheelbarrow was not "protected activity." It is not reasonable to conclude that a miner would find this activity unsafe once the hazard was removed—the clinkers swept away. Boswell's supervisor addressed Boswell's concerns and provided a reasonable alternative. *See Bush,* 5 F.M.S.H.R.C. 993, 997–98 (1983). Therefore, we hold that the ALJ's conclusion that Boswell was engaged in "protected activity" when he refused to push the wheelbarrow is not supported by substantial evidence.

### C. *Adverse Action*

██ National Cement argues that it took no "adverse action" against Boswell because permitting an employee to transfer to a higher paying job is not the "adverse action" contemplated by 30 U.S.C. § 815(c). We agree. The ALJ initially found that Boswell "was financially better off in the job he was sent into on January 11 than [sic] he would have been had he remained in the job he was disqualified from." R1–325–26. However, the Commission found that Boswell's increased earnings in the payloader operator job were based on the fact that he worked more hours in the new job and accordingly, he had suffered an adverse action. R1–385. Since Boswell's hourly rate as a payloader operator was less than that of a utility laborer, the Commission found adverse action.

The record indicates that Boswell was offered a repairman's job at a higher pay grade. Boswell initially accepted the job but later changed his mind and opted for the job with a lower pay grade. Hence, the only factual conclusion is that Boswell would have made more money in one of the other jobs either because of an increased hourly rate or the opportunity to work more hours.

Section 105(c)(1) provides that an operator shall not "discharge or in any manner discriminate against ..." an employee who engages in protected activity. Discharge is apparently adverse action. Boswell argues that allowing him to "roll" to a higher paying job is the type of employment action which would inhibit miners from making safety complaints. This appears nonsensical to us. National Cement's offer to Boswell to "roll" into a higher paying job is not indicative of adverse action. Boswell consulted with his union representative and decided to accept the lower paying job, but one in which he actually made more money due to overtime work. If National Cement intended to take "adverse action" against Boswell it could have suspended Boswell according to discipline policy. Accordingly, we see no "adverse action" within the meaning of 30 U.S.C. § 815(c)(1).

### CONCLUSION

We hold that the Commission erred in its conclusions that Boswell engaged in protected activity when he refused to use the wheelbarrow to perform his assigned task, and that National Cement took "adverse action" against Boswell for engaging in the "protected activity." Therefore, we grant the petition for review, reverse the Commission's decision, and remand this case to the Commission for further proceedings consistent with this opinion.

REVERSED and REMANDED.