BUCK CREEK COAL, INCORPORATED,
Petitioner,

v.

FEDERAL MINE SAFETY AND
HEALTH ADMINISTRATION, and Rob-
ert Reich, Secretary of the United States
Department of Labor, Respondents.

No. 94–2084.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 7, 1994.

Decided March 28, 1995.

Motion to Amend Granted in Part, Denied
in Part; Opinion Modified April 20,
1995.

Patrick A. Shoulders (argued), Robert L.
Burkart, and Steven K. Hahn, Ziemer, Stay-

man, Weitzel & Shoulders, Evansville, IN, for petitioner.

Lisa A. Gray, Dept. of Labor, Chicago, IL, Paul Merlin, Federal Mine Safety & Health Review Com'n., Office of Administrative Law Judges, Falls Church, VA, and W. Christian Schumann, Susan E. Long (argued), U.S. Dept. of Labor, Mine Safety and Health Admin., Arlington, VA, for respondents.

Before COFFIN, CUDAHY and ROVNER, Circuit Judges.*

ILANA DIAMOND ROVNER, Circuit Judge.

On March 31, 1993, a Mine Safety and Health Administration ("MSHA") inspector cited Buck Creek Coal, Inc. after finding a potentially hazardous coal dust accumulation in one of its mines in violation of federal safety regulations. After hearing evidence from both sides, an administrative law judge entered judgment against Buck Creek. The Federal Mine Safety and Health Review Commission denied Buck Creek's petition for discretionary review, and Buck Creek now petitions for review in this court. We also deny the petition.

I.

Buck Creek owns and operates a coal mine located in Sullivan County, Indiana. When MSHA inspector James Holland inspected the mine on March 31, 1993, he noted an accumulation of loose coal and coal dust in the "feeder" area, where mined coal is transferred from shuttle cars to conveyor belts. Pursuant to section 104(d)(1) of the Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 814(d)(1), he issued a citation, which contained these charges:

Accumulation of loose fine coal and float coal dust, black in color was permitted to accumulate underneath the belt conveyor, tail roller, and feeder from the check curtain behind the feeder and extended inby [sic] the feeder and including all three dumping points, a distance of 116 feet.

The accumulations ranged from 2 inches to 3½ feet in depth and 18 feet in width.

According to the citation, the accumulation violated 30 C.F.R. § 75.400, which provides:

Coal dust, including float coal dust deposited on rock-dusted surfaces, loose coal, and other combustible materials, shall be cleaned up and not be permitted to accumulate in active workings, or on electric equipment therein.

The inspector further found that the violation was both "significant and substantial" and "unwarrantable," as defined in 30 U.S.C. § 814(d)(1), which provides:

If, upon any inspection of a coal or other mine, an authorized representative of the Secretary finds that there has been a violation of any mandatory health or safety standard, and if he also finds that, while the conditions created by such violation do not cause imminent danger, such violation is of a nature as could significantly and substantially contribute to the cause and effect of a coal or other mine safety or health hazard, and if he finds such violation to be caused by an unwarrantable failure of such operator to comply with such mandatory health or safety standards, he shall include such finding in any citation given to the operator under this chapter....

Under the authority of 30 U.S.C. § 820(i), a $2000 civil penalty for the violation was proposed. After an evidentiary hearing, the administrative law judge ("ALJ") found that each of the inspector's conclusions was supported by the evidence and affirmed the citation and penalty. Not contesting the propriety of either the citation or the penalty, Buck Creek now contests only the ALJ's conclusions, which became those of the Secretary after the Review Commission declined review, that the violation was both "significant and substantial" and "unwarrantable." Having ourselves reviewed the record, we also deny Buck Creek's petition for review.

---

* The Honorable Frank M. Coffin of the United States Court of Appeals for the First Circuit, sitting by designation.

## II.

We must defer to the factual findings of the ALJ so long as they are "supported by substantial evidence on the record considered as a whole" (30 U.S.C. § 816(a)(1)), and we reject Buck Creek's contention that that standard has not been met in this instance. Here, Buck Creek focuses mainly on the latter basis for reversal, but its argument lacks merit. The ALJ's findings as to both issues were not only supported by substantial evidence, they were thoroughly explained in a well-reasoned opinion and were in accordance with the cases that have interpreted and applied the relevant standards.

As for the finding that a violation is "significant and substantial," the Review Commission and several courts of appeals have agreed that four conditions must be met:

(1) the underlying violation of a mandatory safety standard; (2) a discrete safety hazard—that is, a measure of danger to safety—contributed to by the violation; (3) a reasonable likelihood that the hazard contributed to will result in an injury; and (4) a reasonable likelihood that the injury in question will be of a reasonably serious nature.

*Secretary of Labor v. Mathies Coal Co.*, 6 FMSHRC 1, 3–4 (1984); *see also Austin Power, Inc. v. Secretary of Labor*, 861 F.2d 99, 103 (5th Cir.1988); *Consolidation Coal Co. v. Federal Mine Safety and Health Review Comm'n*, 824 F.2d 1071, 1075 (D.C.Cir. 1987). Here, Buck Creek contends that the ALJ's determination as to the third and fourth of those conditions (a reasonable likelihood both that the hazard would cause an injury and that the injury would be serious) were not supported by substantial evidence. We disagree. True, most of the ALJ's analysis focused on the second factor, the existence of "a discrete safety hazard ... contributed to by the violation." In that regard he made these findings, based primarily on the testimony of Inspector Holland:

[T]here were substantial accumulations of loose coal, coal fines and float coal dust, in the feeder area, particularly at all three dumping points and the tailpiece. The tail roller was completely covered and was turning in the coal fines. The inspector also noted that the color of the accumulations was black. The significance of that fact being an indication that the accumulation was not mixed with rock dust and therefore not of the proper incombustible content. A heated roller turning in that combustible material could easily be an ignition source which could in turn cause a fire.... [T]he existence of nearby combustible material could serve to propagate any fire that got started from a hot roller.

(March 7, 1994 Order at 3; *see also* Nov. 30, 1993 Tr. at 9–14.) In contrast to that finding, the ALJ's conclusions as to the third and fourth factors were admittedly sparse, consisting only of this sentence:

Additionally, Inspector Holland credibly testified and I accept his opinion, that in the event of a fire, smoke and gas inhalation by miners in the area would cause a reasonably serious injury requiring medical attention.

(March 7, 1994 Order at 4.) But contrary to Buck Creek's contention, no further evidence was necessary to support the ALJ's conclusion. First, credibility determinations reside in the province of the ALJ (*Jancik v. HUD*, 44 F.3d 553, 556 (7th Cir.1995); *Carry Cos. v. NLRB*, 30 F.3d 922, 926 (7th Cir.1994)) and the ALJ certainly did not abuse his discretion here in crediting the opinion of Inspector Holland, a federal mine inspector with 32 years of mining experience who specializes in mine ventilation. (Nov. 30, 1993 Tr. at 6.) Nor was anything more than Inspector Holland's opinion necessary to support the common sense conclusion that a fire burning in an underground coal mine would present a serious risk of smoke and gas inhalation to miners who are present. Indeed, a brief review of the legislative history of the 1977 Act makes clear that fire is one of the primary safety concerns that has motivated federal regulation of the coal mining industry. *See* H.R.Rep. No. 312, 95th Cong., 1st Sess. (1977); S.Rep. No. 181, 95th Cong., 1st Sess. (1977).

Nor has Buck Creek identified any evidence that tends to undermine the ALJ's conclusion. In attempting to do so, Buck

Creek has relied mainly on the testimony of H. Michael McDowell, its vice president of human resources whose responsibilities include "tak[ing] care [of] the safety issues." (Nov. 30, 1993 Tr. at 95.) But the only testimony of McDowell that actually bears on the question of whether a fire would be likely to result in serious injury [1] pertained to Buck Creek's fire safety systems. McDowell testified, for example, that the mine has a carbon monoxide detector system, that the feeder has a fire-retardant belt and a "fire suppression system," that Buck Creek has a "fire brigade" team, a rescue team and fire fighting equipment, and that the mine is ventilated in such a way that the smoke would have been pulled away from the area where workers were located. (*Id.* at 99–102.) But again, Buck Creek's position defies common sense. The fact that Buck Creek has safety measures in place to deal with a fire does not mean that fires do not pose a serious safety risk to miners. Indeed, the precautions are presumably in place (as MSHA regulations require them to be) precisely because of the significant dangers associated with coal mine fires.

### III. Unwarrantability

Buck Creek also argues that the ALJ's finding of unwarrantability was not supported by substantial evidence. An "unwarrantable failure" involves "aggravated conduct constituting more than ordinary negligence." *Emery Mining Corp. v. Secretary of Labor,* 9 FMSHRC 1997, 2001 (1987). An unwarrantable failure may be established "by showing that a violative condition or practice was not corrected prior to the issuance of a citation or order because of 'indifference, willful intent or serious lack of reasonable care.'" *Id.* at 2003. It has also been defined as an "intentional or knowing failure to comply or reckless disregard for the health and safety of miners." *Secretary of Labor v. Rochester & Pittsburgh Coal Co.,* 13

FMSHRC 189, 194 (1991). *See also Secretary of Labor v. Virginia Crews Coal Co.,* 15 FMSHRC 2103, 2107 (1993).

Here, the ALJ's conclusion that Buck Creek's violation of 30 C.F.R. § 75.400 was unwarrantable was based in large part on the mere extent of the accumulation, which Inspector Holland believed to reflect at least three shifts of buildup and which the ALJ more conservatively found must have been present since at least the previous shift. But contrary to Buck Creek's suggestion, the extent of accumulation was not the sole basis for the ALJ's decision. He also noted, for example, that a pre-shift examination had already been conducted and that the section foreman had been on duty for one and one half hours, but that still nothing was being done upon Inspector Holland's arrival to remove the extensive accumulation. (March 7, 1994 Order at 5–8.) And even more significant in our view, the ALJ found Buck Creek's failure to remedy the situation to be particularly egregious in light of the fact that the company had already received repeated warnings regarding this very problem. In March 1993 alone, Buck Creek had received nine citations for violations of the same regulation, one of which pertained to the same area in which the accumulation now at issue was located. (*Id.* at 7.) The ALJ's conclusion that the violation was in this instance "unwarrantable" was therefore clearly supported by substantial evidence. His determination that Buck Creek's contrary interpretation of the evidence was "illogical" was also well within his discretion. (*see id.* at 6.)

### IV.

The ALJ's conclusions were both well-reasoned and supported by the evidence. Buck Creek's petition for review is DENIED.

---

1. A significant portion of McDowell's testimony that Buck Creek recapitulates in its brief actually pertains to the second condition, whether the coal accumulations were likely to cause a fire (*see* Nov. 30, 1993 Tr. at 97–98.), even though Buck Creek has not challenged the ALJ's conclusion in that regard. As for that condition, the ALJ's conclusion was clearly supported by substantial evidence, grounded as it was in the extensive and detailed testimony of Inspector Holland. The ALJ did not abuse his discretion in choosing to credit that evidence over the testimony of McDowell. In any event, McDowell's testimony regarding the likelihood of fire has no bearing on the separate question of whether such a fire would be likely to result in serious injury.