[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 8, 2006
THOMAS K. KAHN
CLERK

No. 06-11442
Non-Argument Calendar
_____

Agency No. SE 2005-325-RM

CRIMSON STONE,

Petitioner,

versus

FEDERAL MINE SAFETY AND HEALTH REVIEW
COMMISSION AND SECRETARY OF LABOR

Respondent.

_____

Petition for Review of a Decision of the
Federal Mine Safety & Health Administration
_____

**(September 8, 2006)**

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

This case arises from a citation that the Federal Mine Safety and Health Administration issued to Crimson Stone. Crimson Stone contested the citation, and an administrative law judge affirmed it. The Federal Mine Safety and Health Review Commission denied Crimson Stone's petition for discretionary review of the ALJ's decision, and Crimson Stone filed a petition for review with this Court. We deny the petition.

## I.

Crimson Stone, located in Hueytown, Alabama, is a mine that produces aggregate which is primarily used on baseball fields. It has operated the Hueytown facility for fifteen years, and it employs one supervisor and four hourly employees. Crimson Stone's forty-acre site contains three separate physical operations: a wet plant, which screens the rocks and washes them; an excavator, where a horizontal crusher crushes the rock into smaller sizes; and a dry plant, where a vertical crusher crushes the rock into three smaller sizes. The three plants do not operate simultaneously because each of the crushers has a one hundred horsepower motor, and the owner of the plant was instructed that the transformer does not have enough power for both of those machines to run at the same time. Even if it were possible to run both crushers at the same time, the cost of doing so

would be very high.  The citation that was issued on August 25, 2005, involved equipment in Crimson Stone's dry plant area.

Before the MSHA inspector began her inspection on that day, she heard the dry plant running but did not actually see the plant in operation.  When she inspected the dry plant, she saw particles falling off of the belt, and based on that she concluded that the belt had recently been running.  She noted that the guard on the right side of the conveyor was worn out and was hanging loose.  Pinch points at the train drive, head pulley, and tail pulley were exposed.  The inspector determined that even if the guard had been properly bolted in position, it still would not have provided adequate protection.  She issued a citation.

In affirming that citation, the ALJ found that Crimson Stone had failed to provide an adequate guard on a belt drive and had committed a significant and substantial violation of a mandatory safety standard.  According to that standard, "[m]oving machine parts shall be guarded to protect persons from contacting gears, sprockets, chains, drive, head, tail, and takeup pulleys, flywheels, couplings, shafts, fan blades, and similar moving parts that can cause injury." 30 C.F.R. § 56.14107(a).  The ALJ determined that, in order to prove the violation as charged, it was not necessary for the Secretary to show that the dry plant was actually operating with a defective guard when the citation was issued.  The ALJ found

3

that the violation was significant and substantial based in part on the MSHA inspector's testimony that severe and fatal accidents are likely to occur as a result of insufficient guarding. In addition to that testimony, the ALJ relied on corroborative photographs of the improperly guarded machinery.

Evidence showed that the day before the inspection, a skid loader had caught the edge of the guard, tearing it away from its usual position. There was testimony that before the citation was issued, Crimson Stone's supervisor had not seen the damaged guard. However, because the evidence also showed that the guard was badly deteriorated and that it would have been inadequate even if it had been in its proper position, the ALJ found that the supervisor had prior knowledge that the guarding was seriously deficient and that he failed to remedy the situation. Therefore, the ALJ concluded that the violation occurred as a result of the operator's unwarrantable failure. In doing so, the ALJ noted that in August 2004 and January 2005, Crimson Stone had been cited for inadequate guarding on the same conveyor and that these prior similar violations served as an independent basis for finding that the current violation resulted from the operator's unwarrantable failure.

## II.

We review an ALJ's legal conclusions de novo. See Antipova v. U.S. Att'y Gen., 392 F.3d 1259, 1261 (11th Cir. 2004). We will uphold an ALJ's findings of fact if they are supported by substantial evidence on the record considered as a whole. Nat'l Cement Co. v. FMSHRC, 27 F.3d 526, 530 (11th Cir. 1994). "Substantial evidence is determined by evaluating whether there is such relevant evidence as a reasonable mind might accept as adequate to support the judge's conclusion." Id. (quotation marks and alterations omitted). The deferential standard of review that applies to administrative decisions dictates that we defer to an agency's factfindings as long as the conclusion is reasonable, "even if we could have justifiably found differently." Kelliher v. Veneman, 313 F.3d 1270, 1277 (11th Cir. 2002).

### A.

Crimson Stone contends that there must be a showing that a machine was actually operated without proper guards in order to establish a violation of 30 C.F.R. § 56.14107(a). It directs our attention to Northwest Aggregates, 20 FMSHRC 518 (1998), as support for that contention. That decision involved a portable crusher whose guards had been removed while repairs were being done. Id. at *4. The Commission stated that "[t]he Secretary must show that the

5

equipment was operated without guards in place to establish a violation." Id. However, that statement must be considered in the factual context of the case. The commission found that the improperly guarded crusher had been logged out and tagged out, and the guards would have been replaced before the crusher was unlocked and operated again. Id. It explained that "[i]n this case, the mine operator established that it removed the guards to perform maintenance and to clean up accumulations while the equipment was locked out." Id.

The facts of Northwest Aggregates are distinguishable because in the present case the guard had not been intentionally removed in order to facilitate maintenance of the conveyor. The guard in question had been ripped off when a worker caught the edge of it with a skid loader, and it was hanging on by one bolt. On August 25, 2005, the day of the inspection, the guard had fallen and was resting on the ground. By contrast, in Northwest Aggregates there was no finding that the guards had been torn from their proper places. See id. They merely had been removed while the machinery was being serviced and the evidence established that they would have been replaced before operation resumed. See id.

The application of safety standards does not require proof that the equipment was actually operating at the time of the inspection. See Mid-Continent Coal and Coke Co., 3 FMSHRC 2502, 2504 (1981) (holding that a

6

temporary interruption in mining activities in preparation for further mining and production did not suspend regulatory requirements and "[t]o hold otherwise would allow unsafe conditions . . . to escape sanction unless the operator were caught in the act of cutting, mining or loading"). Crimson Coal argues that Mid-Continent Coal and Coke Co. is distinguishable because in that case there had only been a temporary halt in mining, but in its situation the dry plant had not run for several weeks before the inspection. The reasoning of Mid-Continent Coal and Coke Co., however, applies with equal force to the present case. The inspector did not have to catch the Crimson Stone in act of operating the dry plant conveyor with its guard torn off in order to justify a citation for that violation. Mid-Continent Coal and Coke Co. does not suggest otherwise. The ALJ's finding that the Secretary proved the violation as charged is supported by substantial evidence in the record.

B.

Crimson Stone next contends that, because the guard had been inspected twice a year for fifteen years without receiving a citation, the ALJ violated the fair notice doctrine by finding that the guard was inadequate even if it had been bolted in its proper position. Crimson Stone argues that the ALJ failed to consider that the previously cited guards were on the other side of the conveyor system. It also

contends that the standard applied here, 30 C.F.R. § 56.14107(a), is inconsistently enforced and unconstitutionally vague. We disagree.

An operator receives fair notice of the agency's interpretation of a regulation if a reasonably prudent person familiar with the mining industry and the protective purposes of the standard would have recognized the specific prohibition or requirement of the standard. Good Construction, 23 FMSHRC 995, 1006 (2001). It is clear that § 56.14107(a) requires a guard to be adequate "to protect persons from contacting . . . moving parts that can cause injury." The citation issued to Crimson Stone stated:

> The guard that provided protection of persons from the tail pulley, head pulley and chain drive and on the conveyors that take the rock from the dry plaint crusher to the screen deck, was not being maintained. The guard was hanging and it was easy to come in to contact with the moving machine parts. Employees working/traveling near this area were exposed to the possibility of injury, from entanglement hazards, and/or pinch points. Employees work and travel this area daily.
>
> This area has been cited for guarding in the previous two inspections and the foreman should have been aware of the condition. This condition shows unwarrantable failure of management to provide and maintain a secure guard at this location.

The inspector's statement that the guard was not being maintained gave Crimson Stone notice about the deteriorated condition of the guard, as illustrated in the

8

photographs in the record. Although the specific guard in question had not been cited, the citation of other guards at the belt drive of the dry plant was enough to put Crimson Stone on notice that attention should be paid to the guards in that area.

The ALJ's finding that the guard would have been inadequate even in its properly bolted condition did not violate the fair notice standard. The citation stated that the guard was inadequate to protect people from coming into contact with the moving parts of the machinery that might cause injury, and that constitutes a violation of § 56.14107(a). Crimson Stone was not prejudiced by the nature or amount of notice it received concerning the condition of the guard.

C.

Crimson Stone contends that substantial evidence does not support the ALJ's finding that there was a significant and substantial violation. It argues that there was no reasonable likelihood that the hazard would result in injury because the dry plant was not operational, the area around it was not regularly traveled, and the dry plant was de-energized.

To establish a significant and substantial violation of a safety hazard, four requirements must be satisfied: (1) an underlying violation of a mandatory safety standard, (2) a discrete safety hazard contributed to by the violation, (3) a

9

reasonable likelihood that the hazard will result in injury, and (4) a reasonable likelihood that the injury will be serious. Mathies Coal Co., 6 FMSHRC 1, 3–4 (1984). Crimson Stone contends that substantial evidence does not support the ALJ's finding that the third element was met. We conclude that it does.

Regardless of whether the dry plant was operating when the inspector began her inspection, nothing in the record indicates that it was permanently shut down. It is undisputed that the guard was inadequate at the time the dry plant was inspected. Any assumptions about how and when it would have been repaired do not alter the significant and substantial nature of the violation. See Mathies Coal Co., 6 FMSHRC at 3–4; see also Bellefonte Lime Co., 20 FMSHRC 1250, 1255 (1998) ("The operative time frame for determining if a reasonable likelihood of injury exists includes both the time that a violative condition existed prior to the citation and the time that it would have existed if normal mining operations had continued."); U.S. Steel Mining Co., 6 FMSHRC 1573, 1574 (1984) (rejecting the mine operator's argument that a significant and substantial violation should be determined based solely on the condition as it exists at the precise moment of inspection).

Crimson Stone also argues that there was no reasonable likelihood of injury because the area around the guard was not well traveled. It asserts that a shovel

located near the conveyor did not establish that miners had been working in the area because a skid loader is used to clean out debris from under the conveyor system. It points out that when maintenance is required, the dry plant is de-energized at multiple master switches and the machine is locked out with a padlock. Although these safety precautions are all well and good, they do not change the fact that a violation occurred because the conveyor was improperly guarded. See Buck Creek Coal, Inc., 52 F.3d 133, 136 (7th Cir. 1995) (in making a significant and substantial determination the fact that a mine operator "has safety measures in place to deal with a fire does not mean that fires do not pose a serious safety risk to miners"). There is a reasonable likelihood that if a miner had come into contact with the conveyor, he could have been injured because the conveyor was improperly guarded. That is just the type of injury the safety standard is designed to prevent. See 30 C.F.R. § 56.14107(a).

In determining that the violation was significant and substantial, the ALJ did not err when he considered testimony about guarding violations committed by mine operators in Mississippi. The Commission's procedural rules provide that "[r]elevant evidence, including hearsay evidence, that is not unduly repetitious or cumulative is admissible." 29 C.F.R. § 2700.63(a). The record shows that the inspector testified about those other incidents at mines in Mississippi in order to

11

establish her knowledge of and familiarity with guarding accidents. The testimony showed that improper guarding can potentially result in very serious injury. That background testimony did not form the sole basis of the ALJ's finding that the violation was significant and substantial, and he did not err in admitting it.

Substantial evidence supports the ALJ's finding that the violation was significant and substantial.

## D.

Finally, Crimson Stone contends that the ALJ's finding of unwarrantable failure is not supported by substantial evidence. It argues that the dry plant had not operated in weeks, and no evidence supports a finding that the supervisor knew or should have known about the guarding condition of the conveyor system.

Unwarrantable failure is "'aggravated conduct constituting more than ordinary negligence.'" Buck Creek Coal, Inc., 52 F.3d at 136 (quoting Emery Mining Corp., 9 FMSHRC 1997, 2001 (1987)). It is determined by:

> looking at all the facts and circumstances of each case to see if any aggravating factors exist, such as the length of time that the violation has existed, the extent of the violative condition, whether the operator has been placed on notice that greater efforts are necessary for compliance, the operator's efforts in abating the violative condition, whether the violation is obvious or poses a high degree of danger, and the operator's knowledge of the existence of the violation.

12

Lopke Quarries, Inc., 23 FMSHRC 705, 711 (2001). Supervisors are "held to a high standard of care." Id.

Substantial evidence supports the finding that the condition of the guard was open and obvious. The photographs in the recording show that it was hanging off and touching the ground. Although the evidence indicated that it had been torn loose just the day before the inspection, the ALJ found that the photographs revealed that the guard was already in a deteriorated condition and had been in bad shape for some time. The fact that the operator had been cited twice before for inadequate guarding on the same conveyor establishes that Crimson Stone had notice that there were potential problems with guarding in this area of the dry plant. The fact that the citations were for guards on the other side of the conveyor does not diminish that notice. Crimson Stone should have known that the guarding on the conveyor system needed attention.

Substantial evidence supports the ALJ's finding that Crimson Stone's violation of 30 C.F.R. § 56.14107(a) resulted from its unwarrantable failure to comply with the standard.

THE PETITION FOR REVIEW IS DENIED.