In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1659

PEABODY MIDWEST MINING, LLC,
formerly doing business as BLACK
BEAUTY COAL COMPANY,

*Petitioner*,

*v.*

FEDERAL MINE SAFETY AND HEALTH
REVIEW COMMISSION, and
SECRETARY OF LABOR, Mine Safety
and Health Administration,

*Respondents.*

Petition for Review of an Order of the
Federal Mine Safety and Health Review Commission.

ARGUED DECEMBER 10, 2013 — DECIDED AUGUST 12, 2014

Before MANION, ROVNER, and HAMILTON, *Circuit Judges.*

ROVNER, *Circuit Judge.* An inspector of the Mine Safety and Health Administration cited Black Beauty Coal Company (which since has changed its name to Peabody Midwest

Mining, LLC) for violating a federal regulation requiring a protective mound, or "berm," along "the outer bank of elevated roadways." *See* 30 C.F.R. §§ 77.1605(k), 77.2(d). Black Beauty contested the citation before an Administrative Law Judge of the Federal Mine Safety and Health Review Commission, but the ALJ upheld the citation, and Black Beauty sought review by the Commission. The Commission remanded the case to the ALJ, who again upheld the citation. The Commission denied further review.

Black Beauty now petitions for review of the ALJ's order on remand. *See* 30 U.S.C. § 816(a)(1). For the reasons described below, we deny the petition.

## I.

Black Beauty operates surface coal mines in Wyoming, Illinois, and Indiana. The citation that is the subject of this appeal was issued on September 11, 2007, at the Somerville Central Mine in Gibson County, Indiana. An inspector had been at Somerville five days earlier and issued two citations for berms that were too low, one stretching four tenths of a mile along a roadway descending into the mine pit and the other at a dumping location. *See* 30 C.F.R. § 77.1605(l).

A second inspector who knew about these earlier citations arrived on September 11 to verify that the deficient berms had been remedied. At the time Black Beauty was in the process of moving a dragline, a massive piece of excavating equipment, across a ledge cut into the side of the pit, called a "bench." Each bench is used as a road to move vehicles and workers throughout the mine. Berms, which are mounds of dirt and not cement barriers or permanent structures, line each bench to prevent

wheeled vehicles from rolling over the edge and down the steep drop to the next level, in this case 50 feet below. At its widest point, the bench where the dragline was located was 200 feet across and 50 feet above the pit floor. The dragline in this case, called "Peabody," weighs over 5,000 tons; it moves by taking 8-foot "steps" with its feet or shoes, traveling only 450 to 500 feet per hour. To facilitate the move a bulldozer travels in front of the dragline and adjusts the height of the berm by pushing dirt to or from it. The berm here was decreased to three feet tall from at least five feet tall before the move to allow more room for the dragline to maneuver. The bulldozer also smooths out the uneven surface on the bench left by the dragline and rebuilds the berm after the dragline has passed.

During the move the dragline broke down and required servicing, for which Black Beauty employees drove service trucks onto the bench. According to the inspector, the bench on which the dragline was being moved did "not have a berm for a distance of approximately 2/10 of a mile," yet service trucks had been driven onto that stretch and within 18 feet of the edge. The inspector issued a citation under 30 C.F.R. § 77.1605(k) and concluded that the violation was significant and substantial because the lack of a berm could result in a permanently disabling injury.

Black Beauty contested the citation, asserting that the bench did not constitute a "roadway" while the dragline was being moved, since mine vehicles were not also traveling on it during that time. Thus, the company argued a berm was not required. The few vehicles on the bench during the move, Black Beauty pressed, were there only to assist the move. And because the

bench was in poor condition caused by the dragline move, Black Beauty concluded, only slow travel was possible, which made the risk of injury or incident low. An operations manager from Black Beauty added that, even if the bench still was a roadway while the dragline was being moved, the 3-foot "remnant berm" flanking it was at least as tall as the mid-axle height of the largest vehicle traveling on the bench, and so, according to the manager, a berm satisfying the regulation remained in place.

An ALJ rejected Black Beauty's arguments. She decided that the presence of even one rubber-tired vehicle on the bench rendered it a roadway and mandated a berm. The ALJ also determined that the remnant berm remaining on the bench during the dragline move was not tall enough, and thus Black Beauty had violated § 77.1605(k). The lack of an adequate berm, the ALJ continued, created a risk that a truck would veer over the edge of the bench and down the steep incline. Were a truck to take such a fall, the ALJ concluded, there is a reasonable likelihood that serious injury would result, and thus the violation was significant and substantial. *See Secretary of Labor v. Mathies Coal Co.*, 6 FMSHRC 1, 3–4 (1984). The ALJ also decided that, because Black Beauty was on notice that it needed adequate berms based on the earlier citations, its failure to provide a berm on this bench, even during the dragline move, was "unwarrantable," defined as "aggravated conduct constituting more than ordinary negligence." *See Emery Mining Corp. v. Secretary of Labor*, 9 FMSHRC 1997, 2001 (1987); *Buck Creek Coal, Inc. v. Fed. Mine Safety & Health Admin.*, 52 F.3d 133, 136 (7th Cir. 1995). Black Beauty was penalized $4,329.

Black Beauty then petitioned the Commission to review the ALJ's decision. The Commission agreed with the ALJ's conclusion that the bench was a roadway when the citation was issued, though it disagreed with the ALJ's reasoning that the presence of a single rubber-tired vehicle on the bench rendered it a roadway. During the move, the Commission explained, a rubber-tired backhoe was used to assist and remained on the bench; the dragline move, therefore, did not alter the usual state of the bench as a roadway and a berm still was required. The Commission also pointed out a contradiction between the ALJ's order and the record: The ALJ had said that the parties did not dispute that there was a remnant berm on the bench, yet the Secretary had asserted that no berm was present along a section of the bench. The Commission thus vacated the ALJ's decision and remanded the case for her to clarify and explain the basis for her decision.

On remand the ALJ reviewed the hearing transcripts and credited the inspector's testimony that he saw no berm for two tenths of a mile when he issued the citation. The ALJ also reiterated her finding that a serious injury was reasonably likely to occur because of the lack of a berm. She again concluded that the violation was significant and substantial and an "unwarrantable failure" to follow the regulation, based on the reasons given in her original decision. Black Beauty again sought review, but this time the Commission denied the request. The ALJ's decision became final 40 days after it issued. *See* 30 U.S.C. § 823(d)(1).

## II.

We review the Commission's factual findings for substantial evidence. 30 U.S.C. § 816(a)(1); *Mach Mining, LLC v. Secretary of Labor*, 728 F.3d 643, 659 (7th Cir. 2013). We will set aside the factual findings of the ALJ, whose opinion became the final decision, only if they are not supported by substantial evidence. *Zeigler Coal Co. v. Office of Workers' Comp. Programs*, 490 F.3d 609, 614 (7th Cir. 2007); *Kennellis ENergies, Inc. v. Hallmark*, 333 F.3d 822, 826 (7th Cir. 2003). The ALJ's credibility determinations are reviewed for abuse of discretion; conclusions of law are reviewed de novo. *Mach Mining, LLC*, 728 F.3d at 659.

Black Beauty first maintains that the Commission incorrectly concluded that the bench was a roadway while the dragline was being moved and argues that the damage to the bench caused by the dragline rendered it inoperable as a roadway during that time. Instead, according to Black Beauty, the bench became a "broad, rock-marked expanse of ground," unlike a roadway.

The term "roadway" is not defined in any statute or regulation, but the Commission in its decisions has given guidance for determining when to apply that label. For example, in *Secretary of Labor v. Capitol Aggregates, Inc.*, 4 FMSHRC 846, 847 (1982), the Commission decided that an elevated area, including a bench, was a roadway because it "was used to drive a piece of machinery back and forth over the structure." The Commission noted that its conclusion was "rooted in common usage" and "flows from a common sense application of the standard to the facts." *Id.* The Commission also decided in *Secretary of Labor v. El Paso Rock Quarries, Inc.*,

3 FMSHRC 35, 36 (1981), that a bench on which haulage trucks traveled was an elevated roadway.

The Commission in this case reviewed the evidence showing that Black Beauty's vehicles travel on the bench before dragline moves and after the move is complete, primarily for hauling purposes. The parties agree that the bench is a roadway during those routine mining operations. But the Commission also noted that while the dragline is being moved, which occurs every 7 to 10 days, rubber-tired service vehicles continue to use the bench to assist in the move. A backhoe follows the dragline and carries its cable, and if the dragline needs to be serviced or repaired during the move, service trucks travel on the bench to and from the dragline. The Commission concluded that the continuous use of the bench by service or haulage trucks left unchanged the status of the bench as a roadway even during the dragline move.

We conclude that substantial evidence supports the Commission's determination. While at the mining site, the inspector observed tire tracks on the bench and a truck parked near the dragline. Two miners had driven the truck along the bench to the dragline to complete repairs while the dragline was idle. Although the truck may not have been traveling along the bench while the dragline was moving, it was on the bench when the dragline was stopped, which is when the inspector arrived and noticed the lack of a berm. It may be that service vehicles are not driven on the bench while the dragline actually is moving, and therefore a berm would not be required. But the evidence shows that in this case the dragline was down for repairs, and service trucks had resumed driving on the bench, using it as a roadway the same as during normal mining

operations. Additionally, even if the dragline does leave behind it a surface on which vehicles cannot be driven, as Black Beauty argues, the area in front of the dragline remains smooth. That area of the bench, which is where the tire tracks were found, sensibly can be considered a roadway.

Black Beauty next contends that the ALJ's conclusion that the company violated § 77.1605(k) is not supported by substantial evidence because no witness testified that the bench lacked a berm. Instead, Black Beauty insists, there was testimony that a remnant berm still was in place when the inspector arrived. That remnant, Black Beauty says, was higher than the mid-axle height of the largest vehicle on the bench, and so, the company concludes, it satisfied the requirement for a berm. And if there was a violation, Black Beauty contends, it was not significant and substantial because, the company posits, a mine worker would not have been reasonably likely to suffer a substantial injury because of the lack of a berm. Black Beauty instead opines that a driver "may" have faced injury based on evidence that only one truck had traveled close to the edge of the bench, and any vehicles had to drive slowly, if driven at all, because of the damage to the surface of the bench caused by the dragline.

We find substantial evidence to credit the ALJ's conclusion that Black Beauty violated § 77.1605(k) by failing to maintain a berm on two tenths of a mile of the bench. The ALJ recounted the testimony of the inspector, who had 15 years experience in mining and 18 as a mine inspector, that when he arrived at Somerville Central Mine he observed a segment of the bench where "there were no berms, zero berms." Elaboration about that observation is unnecessary. *See Buck Creek Coal*, 52 F.3d at

135 (accepting as substantial evidence opinion of single mine inspector). Although an operations manager from Black Beauty testified that a remnant berm of 16 or 17 inches remained while the dragline was moved, the ALJ credited the inspector's testimony that no berm remained. We defer to that credibility determination, and Black Beauty gives us no reason to doubt it. Moreover, Black Beauty has not pointed to any regulation that says a remnant berm of a specific height will suffice to meet § 77.1605(k). In the absence of substantial evidence to the contrary, we accept the findings of the ALJ.

We also find no reason to disturb the ALJ's conclusion that Black Beauty's violation of § 77.1650(k) was significant and substantial. A violation is significant and substantial if it could lead to some discrete hazard, the hazard was reasonably likely to result in injury, and the injury was reasonably likely to be reasonably serious. *Buck Creek Coal*, 52 F.3d at 135; *Mathies Coal Co.*, 6 FMSHRC at 3–4. We already have concluded that a violation occurred, and the parties do not dispute that the violation led to a hazard—a vehicle could veer off the bench and fall possibly 50 feet. Black Beauty argues that it is not reasonably likely that a vehicle would have traveled off the edge of the bench without the presence of a berm. But the question is not whether it is likely that the hazard (a vehicle plummeting over the edge) would have occurred; instead, the ALJ had to determine only whether, if the hazard occurred (regardless of the likelihood), it was reasonably likely that a reasonably serious injury would result.

The ALJ determined that if a truck traveling on the bench was to swerve over the edge and fall to the surface below, it was at least reasonably likely that the occupants of that vehicle

would sustain a serious or potentially fatal injury. Common sense tells us that the ALJ's conclusion was correct. It is hard to picture a scenario where a large service truck careens over the edge of a roadway 50 feet above ground, rolls down a steep incline to the ground below, and those inside the truck are not significantly injured. Because a reasonably serious harm was at least reasonably likely, we agree with the ALJ's conclusion that this violation was significant and substantial.

Last, Black Beauty contests that the ALJ's finding that the lack of a berm evinced an "unwarrantable failure"—more than ordinary negligence—by Black Beauty to follow the regulation. Black Beauty argues that the past citations it faced for berm violations did not necessarily render it on notice of future violations. In this case, Black Beauty concludes, the Secretary proffered no evidence showing a similarity between the past violations and the one now on appeal that would have put it on notice that it had insufficient berms.

Several factors weigh into the ALJ's analysis of whether a violation was "unwarrantable," including the length of time the violation has existed, the extent of the violation, whether the violator was on notice that greater efforts were necessary for compliance, and whether the violator knew of and attempted to cure the violation. *Secretary of Labor v. Consolidation Coal Co.*, 22 FMSHRC 340, 353 (2000).

The ALJ found this violation to be unwarrantable, emphasizing the extent of the violation (anyone could access and travel the road on the bench while the berm was removed) and the notice that Black Beauty had before being cited for the violation. Only five days earlier another inspector had cited

Black Beauty for inadequate berms at two locations along the bench. The inspector testified that those citations put Somerville Central Mine on "high notice" that it needed taller berms. So not only did Black Beauty know that berms were required, it also knew that its previous efforts to comply were not enough. That means the violation should have been obvious to Black Beauty. *See Secretary of Labor v. IO Coal Company, Inc.*, 31 FMSHRC 1346, 1356 (2009); *Secretary of Labor v. New Warwick Mining Co.*, 18 FMSHRC 1568, 1574 (1996). Substantial evidence supports the ALJ's conclusion that Black Beauty's failure to follow the regulation constituted more than ordinary negligence and was thus "unwarrantable."

## III.

The factual findings and conclusions of the Commission and the ALJ were supported by substantial evidence. Accordingly, Black Beauty's petition for review is DENIED.